UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

TOP SHELV WORLDWIDE, LLC,

    Debtor.

Case No. 23-21248-dob
Chapter 11 Proceeding
Hon. Daniel S. Opperman

_____/

TOP SHELV WORLDWIDE, LLC,
SHAH SPORTS FACILITIES, L.L.C.,
AUBURN HOLDCO, L.L.C., RICKEN SHAH,
AND MANOJKUMAR BALKUMAR SHAH,

    Plaintiffs,

v.

Adv. Proc. No. 23-02031

WORLDWIDE BUSINESS LENDERS, L.L.C.,
AND WBL SPO I, L.L.C.,

    Defendants.

_____/

## AMENDED
## OPINION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

Usury law is unclear and references other statutes that, in turn, are inconclusive. The Court, in this case, follows this circuitous statutory path and reaches a conclusion that some may find unfair and devoid of common sense; others will find it proper and consistent with statutory language. A brief reiteration of the facts follows.

### Findings of Fact

Tri City Sports Complex LLC, now known as Shah Sports, LLC ("Shah Sports") borrowed funds from Defendant World Business Lenders LLC ("WBL") secured by commercial property located at 5117 Garfield Road, Auburn, Michigan. Shah Sports owns and operates the business upon with the real property is located. A promissory note was executed on October 5, 2022 by Shah Sports in favor of WBL, and the following persons and entities are guarantors of this debt:

Auburn Holdco, LLC; Top Shelv Worldwide, LLC (owner of the real property and executor of the mortgage); Ricken Shah; and Monojkumar Shah (former business partner of Ricken Shah). The amount borrowed was $1.1 million per the promissory note. The mortgage was recorded on October 12, 2022, and an assignment to WBL SPO I, LLC was recorded on December 27, 2022. Shah Sports defaulted on the loan and a foreclosure sale was scheduled and adjourned several times. Prior to a last adjourned foreclosure sale set for October 20, 2023, Top Shelv filed this Chapter 11 bankruptcy on October 19, 2023.

It is undisputed that the interest rate on this loan was 30% per annum, increasing to 40% upon an event of default. The amounts of $82,274.01 and $113,917.86 were retained pursuant to the "holdback agreement" at the time of execution of the promissory note to account for the seasonally slow months of Shah Sports operations. This provided for roughly thirteen initial loan payments.

Shah Sports and the other Plaintiffs argue that summary judgment should be granted in their favor because the interest rate is usurious under Michigan law, making the promissory note unenforceable. Plaintiffs assert that Michigan law should apply despite the choice of law provision in the promissory note. On this point, Plaintiffs argue that because the Debtor, and other individuals and entities involved are all Michigan entities or otherwise domiciled in Michigan, the Michigan usury statutes were intended to protect them and should override any choice of law provision in the promissory note as a matter of public policy. Further, if the promissory note is unenforceable, the mortgage and guarantees are unenforceable. Accordingly, WBL's claim should be disallowed and the mortgage unenforceable as a matter of law. Plaintiffs also request that this Court determine the guarantees of the non-debtor individuals and entities be determined unenforceable.

Defendants assert that the parties agreed that the promissory note is governed by New Jersey law, and under New Jersey law, the interest rate is not usurious. Further, even if Michigan law governed this loan, the applicable Michigan statute, MCL § 438.31c(11), provides that the interest rate for this type of loan is legal. Thus, Defendants argue that summary judgment is appropriate in their favor.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a) and E.D. Mich. LR 83.50. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate).

## Law

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 486 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

As summarized by *St. Paul Fire & Marine Ins. Co. v. CEI Florida, Inc.*, 864 F. Supp. 656 (E.D. Mich. 1994), the Sixth Circuit has promulgated a "series of principles to be applied in motions for summary judgment:

> Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
> The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element as to a non-movant's case.
> This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
> The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
> The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
> The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts."  Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted.  The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Id*. at 664-65 (citing *J.C. Bradford & Co.*, 886 F.2d at 1479-80 (footnotes with citations omitted)).

<u>Contract Interpretation</u>

The well-settled law of contract interpretation requires the court to examine the plain language of the contract at issue.  If the contract language is clear, the court must enforce the contract according to its plain meaning. *Clevenger v. Allstate Ins. Co.*, 443 Mich. 646, 654, 505 N.W.2d 553, 557 (1993).  A party's alleged "reasonable expectations" cannot supersede the unambiguous language of the contract. *Wilkie v. Auto-Owners Ins. Co.,* 469 Mich. 41, 60, 664 N.W.2d 776, 786 (2003).  If the contract is ambiguous, then the court should look to extrinsic evidence to determine the intent of the parties. *Id*. at 786.  If the court cannot determine the parties'

intent, the contract must be construed against the drafter, in the *Wilkie* case, the drafter being the insurer. *Id*. at 786-87.

Choice of law provisions in contracts are governed by the general rules of contract interpretation. As cited by Defendants, Michigan law generally upholds choice of law provisions in contracts with limited exceptions: (1) if the state chosen lacks a substantial relationship to the parties or transaction; (2) there is no reasonable basis for adopting the law of the chosen state; or (3) it would "be contrary to a fundamental policy of [Michigan] which has a materially greater interest than the chosen sate in determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Chrysler Corp. v. Skyline Ind. Servs., Inc.*, 448 Mich. 113, 126; 528 N.W.2d 698 (1995).

<u>New Jersey Usury Law</u>

New Jersey Statute Annotated, N.J.S.A. 31:1-1, states:

> (a) Except as herein and otherwise provided by law, no person shall, upon contract, take, directly or indirectly for loan of any money, wares, merchandise, goods and chattels, above the value of $6.00 for the forbearance of $100.00 for a year, or when there is a written contract specifying a rate of interest, no person shall take above the value of $16.00 for the forbearance of $100.00 for a year.
>
> * * * *
>
> (e) Notwithstanding the provisions of paragraph (a) or (b) of this section, contracts for the following classes or types of loans may provide for any rate of interest which the parties agree upon, and interest at any such rate may be taken, notwithstanding that it exceeds a rate limited by paragraph (a) or (b) of this section:
> (1) Loans in the amount of $50,000.00 or more, except loans where the security given is a first lien on real property on which there is erected or to be erected a structure containing one, two, three, four, five or six dwelling units, a portion of which structure may be used for nonresidential purposes. The rate of interest stated in such contract upon the origination of such loans may be taken notwithstanding that payments thereon reduce the amount outstanding to less than $50,000.00; . . . .

Plaintiffs rely upon subsection (a). Defendants point to subsection (e)(1) as providing an exception they assert is applicable in this case.

Further, N.J.S.A.2C:21-29, New Jersey's criminal usury statute caps this unlimited civil limit to 50% for corporate borrowers such as Shah Sports:

> a. Criminal usury. A person is guilty of criminal usury when not being authorized or permitted by law to do so, he:
>
> (1) Loans or agrees to loan, directly or indirectly, any money or other property at a rate exceeding the maximum rate permitted by law; or
>
> (2) Takes, agrees to take, or receives any money or other property as interest on the loan or on the forbearance of any money or other interest in excess of the maximum rate permitted by law.
>
> For the purposes of this section and notwithstanding any law of this State which permits as a maximum interest rate a rate or rates agreed to by the parties of the transaction, any loan or forbearance with an interest rate which exceeds 30% per annum shall not be a rate authorized or permitted by law, except if the loan or forbearance is made to a corporation, limited liability company or limited liability partnership any rate not in excess of 50% per annum shall be a rate authorized or permitted by law.

<u>Michigan Usury Law</u>

The Michigan usury statute provides generally:

MCL 438.31. Legal interest rate

> The interest of money shall be at the rate of $5.00 upon $100.00 for a year, and at the same rate for a greater or less sum, and for a longer or shorter time, except that in all cases it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum. This act shall not apply to the rate of interest on any note, bond or other evidence of indebtedness issued by any corporation, association or person, the issue and rate of interest of which have been expressly authorized by the public service commission or the securities bureau of the department of commerce, or is regulated by any other law of this state, or of the United States, nor shall it apply to any time price differential which may be charged upon sales of goods or services on credit. This act shall not be construed to repeal section 78 of Act No. 327 of the Public Acts of 1931, as amended, being section 450.78 of the Compiled Laws of 1948. This act shall not render unlawful, the purchase of any note, bond or other evidence of indebtedness theretofore issued by any borrower not then domiciled in this state, which bear any rate of interest which is lawful under the law of the domicile of the borrower at the date of issue thereof, and in such case any such rate of interest may be charged and received by any person, firm, corporation or association in this state.

MCL 438.61. Business entity, related entity, defined; interest rate agreements

    (a) "Business entity" means a corporation, trust, estate, partnership, cooperative, or association or a natural person who furnishes to the extender of the credit a sworn statement in writing specifying the type of business and business purpose for which the proceeds of the loan or other extension of credit will be used. An exemption under this act does not apply if the extender of credit has notice that the person signing the sworn statement was not engaged in the business indicated on the sworn statement.

    (b) "Related entity" means a business entity other than a natural person whose members, owners, partners, or limited partners include a state or national chartered bank, a state or federal chartered savings bank, a state or federal chartered savings and loan association, a state or federal chartered credit union, an insurance carrier, or finance subsidiary of a manufacturing corporation.

    (2) Notwithstanding Act No. 326 of the Public Acts of 1966, being sections 438.31 to 438.33 of the Michigan Compiled Laws, and Act No. 259 of the Public Acts of 1968, being sections 438.41 to 438.42 of the Michigan Compiled Laws, but subject to any other applicable law of this state or of the United States which regulates the rate of interest, it is lawful in connection with an extension of credit to a business entity by a state or national chartered bank, a state or federal chartered savings bank, a state or federal chartered savings and loan association, a state or federal chartered credit union, insurance carrier, finance subsidiary of a manufacturing corporation, or a related entity for the parties to agree in writing to any rate of interest.

    (3) Notwithstanding Act No. 326 of the Public Acts of 1966, it is lawful in connection with an extension of credit to a business entity by any person other than a state or nationally chartered bank, a state or federal chartered savings bank, a state or federal chartered savings and loan association, a state or federal chartered credit union, insurance carrier, finance subsidiary of a manufacturing corporation, or a related entity for the parties to agree in writing to any rate of interest not exceeding the rate allowed under Act No. 259 of the Public Acts of 1968.

MCL 438.32. Violation of act; penalties; attorney fees and court costs

    Any seller or lender or his assigns who enters into any contract or agreement which does not comply with the provisions of this act or charges interest in excess of that allowed by this act is barred from the recovery of any interest, any official fees, delinquency or collection charge, attorney fees or court costs and the borrower or buyer shall be entitled to recover his attorney fees and court costs from the seller, lender or assigns.

    There are various exceptions to Michigan rate of interest caps, one of which is provided in

MCL 438.31c. Subsection (11) of this statute states:

(11) The parties to a note, bond, or other indebtedness of $100,000.00 or more, the bona fide primary security for which is a lien against real property other than a single family residence, or the parties to a land contract of such amount and nature, may agree in writing for the payment of any rate of interest.

The Michigan Limited Liability Company Act, in MCL 450.4212, also addresses interest rates of limited liability company borrowers such as Plaintiffs.

MCL 450.4212. Rate of interest agreed to be paid

A domestic or foreign limited liability company, whether or not formed at the request of a lender, may agree in writing to pay any rate of interest as long as that rate of interest is not in excess of the rate set forth in Act No. 259 of the Public Acts of 1968, being sections 439.41 to 438.42 of the Michigan Compiled Laws.

Michigan law also provides a criminal penalty for usury in MCL 438.41.

MCL 438.41. Criminal usury; penalty

A person is guilty of criminal usury when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding 25% at simple interest per annum or the equivalent rate for a longer or shorter period. Any person guilty of criminal usury may be imprisoned for a term not to exceed 5 years or fined not more than $10,000.00, or both.

Analysis and Conclusion

Choice of Law

The Court must first determine whether New Jersey or Michigan law controls.

The relevant provision of the promissory note states that it is governed by New Jersey law:

This Loan Agreement and all matters arising out of or relating to this Loan Agreement, whether sounding in contract, tort, or statute, shall be governed by, and construed in accordance with, the laws of the State of New Jersey (the "State"), without regard to its conflicts of laws rules.

Whether an exception exists under Michigan law to this clear choice of law provision is the first determination to be made. The Court starts with examining any connections with this case to New Jersey, and finds the only connection is the corporate office of WBL. Everything else—namely the location of the subject property, the location of the borrowers, the location of the guarantors, and the law applicable to foreclosures—is linked to Michigan. While WBL relies on the case of *Equine Luxury Properties, LLC v. Commercial Capital BIDCO, Inc.*, No. 23-1142, 2024 WL 2768514 (W.D. Mich. May 30, 2024) for the proposition that its New Jersey location, as lender, is controlling, the Court concludes these other factors outweigh the one factor in WBL's favor—its New Jersey location. Thus, the Court concludes that under the *Chrysler Corp.* factors, an exception exists to the parties' choice of law provision in the promissory note. First, the parties and the transaction lack a substantial relationship with New Jersey. The Court notes that the promissory note and related documents were not even signed in New Jersey and were separately signed electronically. Throughout the loan negotiations and finalization, there was very little contact between WBL and the borrower. Second, there is otherwise no reasonable basis for adopting New Jersey law. Third, this transaction, the location of the subject property and the parties are tied to Michigan, and the policies and public interests of Michigan should govern such.

This third factor is particularly strengthened by the Michigan Supreme Court decision in *Soaring Pine Capital Real Estate and Debt Fund II, LLC v. Park Street Grp. Realty Servs., LLC*, 999 N.W.2d 8 (Mich. 2023). In *Soaring Pine*, the Michigan Supreme Court noted the public policy concerns under Michigan law that lenders bear the burden to charge lawful interest rates, and that borrowers are protected by a lender's failure to do so. The burden is not upon the borrower to ensure an interest rate is not usurious. *Id.* at 20.

Finally, the recent case of *In re Schenfield*, 659 B.R. 638 (Bankr. W.D.N.Y. 2024), has similar facts, which support the Court's conclusion that Michigan law should govern this promissory note. While the *Schenfield* case was decided under New York law, the factors are generally the same. New York cases prescribe a two-factor test of (1) sufficient contacts with the transaction; and (2) the absence of fraud or violation of public policy. The *Schenfield* Court determined that an exception existed under New York law to the parties' New Jersey choice of law provision in the contract for two reasons. First, there was a complete lack of contact between New Jersey and the transaction. Second, to allow any choice of law other than New York law, would violate public policy. On this point, the Schenfield Court noted that, "[t]o do otherwise would permit individuals by personal fiat to eviscerate the criminal statutes of a state." *Id.* at 639-40.

Analysis Under Michigan Usury Law

As noted by the Michigan Supreme Court in *Soaring Pine*, Michigan usury statutes are incomplete and do not otherwise connect with each other. In other words, there are classes of people and entities that should be protected that are not, and classes that are protected that necessarily should not be. To start, the Court begins with Michigan's criminal usury statute, MCL 438.41, and with a quote from the *Soaring Pine* decision: "However, seeking to collect a usurious

interest rate in a civil collection action, standing alone, is not a criminal offense for usury under MCL 438.41 and therefore cannot form the basis for invoking the wrongful-conduct rule when defending a civil action." *Id*. at 133. As pointed out by the *Soaring Pine* Court, the borrower is not without legal remedy if the facts warrant such. The borrower may "seek sanctions under MCR 2.625 and MCL 600.2591 [and] may also be able to bring a civil action against a lender, such as a common-law action for abuse of process." *Id*. (citation omitted).

A key component of Plaintiffs' argument is MCL 438.61(b)(3) which states:

(3) Notwithstanding Act No. 326 of the Public Acts of 1966, it is lawful in connection with an extension of credit to a business entity by any person other than a state or nationally chartered bank, a state or federal chartered savings bank, a state or federal chartered savings and loan association, a state or federal chartered credit union, insurance carrier, finance subsidiary of a manufacturing corporation, or a related entity for the parties to agree in writing to any rate of interest not exceeding the rate allowed under Act No. 259 of the Public Acts of 1968.

A companion statute, MCL 438.61(b)(2) states:

(2) Notwithstanding Act No. 326 of the Public Acts of 1966, being sections 438.31 to 438.33 of the Michigan Compiled Laws, and Act No. 259 of the Public Acts of 1968, being sections 438.41 to 438.42 of the Michigan Compiled Laws, but subject to any other applicable law of this state or of the United States which regulates the rate of interest, it is lawful in connection with an extension of credit to a business entity by a state or national chartered bank, a state or federal chartered savings bank, a state or federal chartered savings and loan association, a state or federal chartered credit union, insurance carrier, finance subsidiary of a manufacturing corporation, or a related entity for the parties to agree in writing to any rate of interest.

The Court purposely puts both statutes on the same page for comparison. A couple of differences emerge:

1. Under (3), only Act 326 is mentioned in the "Notwithstanding" clause; in (2), both Act 326 and Act 259 appear in the "Notwithstanding" clause.

2. The status of the lender matters, in that subsection (2) lenders and their borrowers may agree to any rate of interest;

      a.     if in writing;

      b.     but subject to any other applicable law of Michigan or the United States.

In contrast, lenders who do not fit the description in subsection (2) and their borrowers may agree to interest:

      a.     if in writing; and

      b.     in an amount not exceeding Act 259.[1]

Plaintiffs and Defendants urge two different readings of "Notwithstanding". Plaintiffs argue the effect of this word is to make MCL 438.61 superior; Defendants argue the word is ambiguous and that the unlimited interest rate should apply.

Following Plaintiffs' logic, MCL 438.61(b)(3) controls, and the interest rate cannot exceed MCL 438.41-42. But MCL 438.41 has its own vague phrase:

> "A person is guilty of criminal usury when, *not being authorized or permitted by law* to do so, . . ." (emphasis added)

It is true that MCL 438.41 later established a 25% interest rate, but further review is needed because a lender may be authorized or permitted by law to charge a greater rate than 25%.

Can MCL 438.31c(11) be used? Plaintiffs' argument is that it cannot because MCL 438.61(b)(3) is superior. If so, the Court must still look to MCL 438.41, which opens the door to a higher interest rate. Moreover, if legislative intent can be inferred from the statutory language, two opposite conclusions can be reached:

      1.     If the legislature wanted to cap interest at 25%, it could have easily done so with a phrase: "parties to agree in writing to a rate not to exceed 25% simple interest".

---

[1] Act 326 is MCL 438.31(c); Act 259 is MCL 438.41-42.

2. The legislature did impose an unstated but referenced rate of interest for (b)(2) lenders—a rate set by any other applicable law of Michigan or the United States. Why would (b)(2) lenders be limited, but (b)(3) lenders not be limited?

Plaintiffs' second argument that MCL 450.4212 governs reaches the same result. It states that a limited liability company may agree in writing to any rate of interest, so long as it does not exceed that allowed in MCL 438.41 to 438.42. So, that path leads back to an inconclusive result.

The argument that MCL 438.31c(11) can be ignored goes far, but not far enough. Both MCL 438.61(c) and 450.4212 direct the reader to MCL 438.41 and 438.42, which in turn invites the reader to look elsewhere. MCL 438.31c(11) is that place and allows, under certain circumstances, an unlimited interest rate.

The Court has also carefully reviewed opinions cited by Plaintiffs and Defendants and shares the observations of those Courts regarding the state of Michigan usury law. The Michigan Supreme Court, in *Soaring Pine Capital Real Estate and Debt Fund II, LLC v. Park Street Group Realty Services LLC*, 511 Mich. 89, 999 N.W.2d 8 (2023), confronted two issues of first impression: (1) Whether a "usury savings clause" is enforceable and (2) whether a lender commits a crime if it seeks to collect an unlawful interest rate in a lawsuit. In *Soaring Pine*, the stated interest rate was 20%, but with fees and associated charges, the rate exceeded 25%. The *Soaring Pines* Court held the usury savings clauses are contrary to public policy and, therefore, unenforceable. A lender, however, does not violate the criminal usury statute by seeking to collect a usurious interest rate in a civil action. The *Soaring Pines* Court did not, however, rule on whether the interest rate was usurious:

> Conceivably, some of the current statutory exemptions from certain usury statutes could be viewed as rough proxies for these types of borrowers. See, e.g., MCL

438.31c(11) (providing that "[t]he parties to a note, bond or other indebtedness of $100,000.00 or more, the bona fide primary security for which is a lien against real property other than a single family residence, or the parties to a land contract of such amount and nature, may agree in writing for the payment of any rate of interest");[24] MCL 450.1275 (allowing "[a] domestic or foreign corporation" to agree in writing to an interest rate "in excess of the legal rate"). But the legislative intent on this point is too muddled for us to draw a clear line between "sophisticated" commercial borrowers and other borrowers.

[24] We do not address Soaring Pine's argument that the loan in this case is not subject to any usury protections pursuant to MCL 438.31c(11).

The Michigan Court of Appeals, in *Scalici v. Bank One, N.A.*, Nos. 254632, 254633, 254634, 2005 WL 2291732 (Mich. Ct. App. Sept. 20, 2005), does provide limited guidance. In *Scalici*, Plaintiffs sued Bank One after they sustained losses in investments made by promissory notes that called for interest over 25%. The maker of the notes could not pay Plaintiffs, so Plaintiffs sued Bank One, claiming that Bank One employees misrepresented the nature of the notes. Bank One relied on the "wrongful conduct rule," which prohibits recovery when a Plaintiff engages in serious misconduct prohibited by a penal or criminal statute. In *Scalici*, the Michigan Court of Appeals found that the rate was over 25% and affirmed the dismissal of Plaintiffs' claims. *Scalici*, however, did not address MCL 438.31c(11).

The *Equine Luxury* Court did specifically rely on MCL 438.31c(11) in two opinions. In *Equine Luxury*, Plaintiffs borrowed $1,834,000 at 18% interest for one year. Plaintiffs made the payments, and the parties extended the loan to July 2023 and then extended the loan again for six months. The last extension charged 26% interest, which increased to over 32% after default. The loan, as extended, was secured by a mortgage on commercial property that was not a single-family residence. Plaintiffs defaulted and Defendant started foreclosure proceedings. Plaintiffs sued to stop the foreclosure, claiming that the lender violated Michigan's usury law. The *Equine Luxury* Court denied Plaintiffs' motion for summary judgment and analyzed the usury issues as follows:

> In other words, Mich. Comp. Laws § 438.61(2) permits business entities to agree to *any rate of interest* when borrowing money from certain regulated lenders. And Mich. Comp. Laws § 438.61(3) permits business entities to agree to any rate of interest *up to the amount permitted by the criminal usury statute* when borrowing money from nonregulated lenders.
>
> . . .
>
> The exception in § 438.31c(11) expressly allows parties to agree to "any rate of interest." *Id*. . . . Indeed, Michigan's criminal usury statute prohibits charging more than 25% interest "when … not authorized or permitted by law[.]" Mich. Comp. Laws § 438.41. Section 438.31c(11) is a law permitting CCB to charge Michigan borrowers any rate of interest for a loan secured by real property that is not a single-family residence. Thus, CCB can rely on that law without running afoul of Michigan's criminal usury statute.

*Id*. at *5-*7.

The *Equine Luxury* Court next turned to Michigan's LLC statute regarding interest rates, specifically MCL 450.4212:

> That provision provides that a limited liability company "may agree in writing to pay any rate of interest as long as the rate of interest is not in excess of the rate set forth in [Mich. Comp. Laws § 438.41]." Mich. Comp. Laws § 450.4212. Because § 438.31c(11) authorizes a rate of interest higher than 25%, and because § 438.41 only prohibits interest rates above 25% when "not authorized" by law, Plaintiffs did not agree to an interest rate in excess of what §§ 438.41 and 450.4212 allow.

*Id*. at *7.

On this point, the *Equine Luxury* Court also found the business entity exception in MCL 438.61(3) to be inapplicable, despite the "notwithstanding" language in this statue:

> However, the same logic discussed above applies here as well. In other words, § 438.41 prohibits charging rates higher than 25% when not authorized by law, but § 438.31c(11) is a law that permits charging a rate higher than 25%. Thus, the loan in this case does not conflict with the business entity exception in § 438.61(3).

*Id*. at *8. The *Equine Luxury* Court further noted that "many business loans are not secured by real property," making MCL 438.31c(11) inapplicable. Thus, this interpretation of MCL 438.61(3) is still applicable to those cases. *Id*.

The *Equine Luxury* Court concluded its analysis with the intent of the legislature with regard to the business entity exception, determining that the legislative history "reflects an intent to expand the rights of business entities, not limit them." On this point, the *Equine Luxury* Court noted:

> The original exemption only applied to business entities taking loans from "any state or national chartered bank or insurance carrier[.]" 1970 Mich. Pub. Acts 143. Because that exemption was "subject to the provisions of any other applicable law," it implicitly limited such loans to the criminal usury rate. *See id*. In 1978, the act was amended to include loans by business entities from "any state or national chartered bank, insurance carrier, *or finance subsidiary of a manufacturing corporation*." 1978 Mich. Pub. Acts 42 (emphasis added). An amendment in 1983 added an exemption for business entities taking loans from nonregulated lenders, capping such loans at 15%. 1983 Mich. Pub. Acts 37-38. In 1997, the act was amended to its current form, allowing business entities taking loans from certain regulated lenders to agree to *any* rate of interest, notwithstanding the criminal usury statute, and increasing the 15% cap on loans from other types of lenders to the rate permitted by the criminal usury statute. 1996 Mich. Pub. Acts 2300. At each stage, the legislature expanded the ability of business entities to obtain loans at higher interest rates. Plaintiffs' interpretation runs in the opposite direction.
>
> The exception in Mich. Comp. Laws § 438.31c for loans exceeding $100,000.00 secured by real property other than a single-family residence first appeared in 1973. 1973 Mich. Pub. Acts 21. The language of that exception has remined substantially the same since its adoption, despite multiple amendments to other sections of § 438.31c from 1973 to 1990. There is no indication that the Michigan legislature intended the business entity exemption to circumscribe the exception in § 438.31c(11).

*Id*. at *8-*9.

The *Equine Luxury* Court reiterated its reading of usury statutes in *Equine Luxury Properties, LLC v. Commercial Capital Bidco, Inc.*, No. 23-1142, 2024 WL 4879698 (W.D. Mich. Nov. 25, 2024).

This Court is persuaded that *Equine Luxury* more completely and correctly reads the usury statutes in Michigan. Although the result may seem unfair to some, the *Equine Luxury* path follows

all of the statutes, gives full meaning to all the statutes, and does not ignore certain statutory language.

The Court notes that if New Jersey law controls, the result is identical. New Jersey allows interest rates as high as 50% if the loan is made to a limited liability company. The borrower in this case is a limited liability company and the rate charged is well below the 50% threshold, even taking into account other charges and holdbacks.

Because the Court concludes that the promissory note is enforceable and valid under MCL 438.41, Plaintiffs are left with their possible civil remedies provided in MCL 438.31 and 438.32. Such are limited to recovery of any interest, late fees, court costs and attorney fees. The Court concludes that MCL 438.31c(11) provides a clear exception to the cap on interest in MCL 438.31. The amount at issue and facts of this case fall squarely within this exception. The loan was for greater than $100,000.00, and the security given was a lien against real property other than a single-family residence. Thus, the parties were free to "agree in writing for the payment of any rate of interest." The relief sought by Plaintiffs in the Adversary Proceeding—a declaration that the promissory note is null and void—is not appropriate under applicable Michigan law.

The Court is compelled to observe a few points. First, all agree the state of the statutory language of usury law in Michigan is distressing. It consists of a patchwork of disjointed collections of statutes with many openings and ambiguities. Second, the Court can well follow contrary readings of these statutes and sees the merit of the conflicting conclusions. In fact, this Court could easily see how a reversal or modification of this Opinion could occur. Third, the Court is struck by how unfair and unreasonable the result is, but also sees the merit in the result. For example, on one hand, should any one entity in Michigan pay unlimited interest? On the other, does Michigan want to attract capital to this State and reward those who take this risk? These

policy decisions, as the Court is reminded and has stated, are to be made by the Legislature and not the Judiciary.

That said, the Michigan Legislature may wish to consider clarifying this area of the law.

## Conclusion

For reasons stated in this Opinion, the Court partially grants Defendants' Motion for Summary Judgment and denies Plaintiffs' Motion for Summary Judgment. The Court declines to rule on the applicability of this decision to the guarantors and the relationship of the guarantors to this transaction because factual disputes remain as to these Plaintiffs, as admitted by Defendants' counsel at oral argument.

**Signed on March 17, 2025**



/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**